# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

TIMOTHY DANIEL SMITH,

        Plaintiff,

v.                                                                        CIVIL ACTION NO. 2:18-cv-01276

CITY OF DUNBAR, WEST VIRGINIA, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment of Defendants the City of Dunbar, West Virginia (the "City"), and Adam Mason ("Mason") (collectively, "Defendants"). (ECF No. 56.) For the reasons provided herein, Defendants' motion, (ECF No. 56), is **GRANTED IN PART** and **DENIED IN PART**.

### I.     BACKGROUND

This action arises from an arrest that occurred on July 18, 2017, in Dunbar, West Virginia. Plaintiff Timothy Smith ("Plaintiff") was walking home when he "lost control of his bladder" and "urinated on the sidewalk." (ECF No. 1 at 2 ¶ 5 (Comp.).) Defendant Mason, an on-duty police officer for the City, arrived on scene and observed that Plaintiff "was sweating profusely and had trouble speaking." (*Id.* ¶ 6.) Plaintiff "immediately requested medical attention" and informed Mason that he "felt like he was having a heart attack." (*Id.*)

Sometime during this initial encounter, Plaintiff fled the scene. (*Id.* ¶ 7.) Mason caught up to Plaintiff and wrestled him to the ground. (*Id.* ¶ 8.) Mason reported that Plaintiff ignored

his verbal commands and waived his arms aggressively, striking Mason on at least one occasion. (*Id.* ¶ 9.) In attempt to gain control over Plaintiff, Mason struck Plaintiff multiple times in the face "with a closed fist." (*Id.* ¶ 8.) Plaintiff was eventually handcuffed but, according to the police report, attempted to flee from Mason again. (*Id.* at 5 ¶ 21.) Mason, ultimately, secured Plaintiff after kneeing him multiple times. (*Id.* at 2 ¶ 8.) Plaintiff was taken to Thomas Memorial Hospital and "treated for multiple facial and head injuries, including a fractured nose." (*Id.* at 5 ¶ 22.) Plaintiff also was charged with battery on an officer, obstruction, and fleeing. (*Id.* at 2 ¶ 9; ECF No. 57-8 (Police Report).)

As a result of this incident, Plaintiff filed this action on September 4, 2018, pursuant to 42 U.S.C. § 1983. He asserts that Defendants violated his rights under the Fourth and Fourteenth Amendments for using excessive force, displaying deliberate indifference to his constitutional rights by failing to objectively and thoroughly investigate allegations of excessive force against Mason, and engaging in a pattern, practice, or custom of filing obstruction charges, without probable cause, to conceal officer misconduct. (*Id.* at 7–8.) Plaintiff also asserts claims under West Virginia common law against Mason for assault, battery, and negligence and the City for negligence and negligent hiring, retention, and supervision.[1] (*Id.* at 8.) On October 21, 2019, Defendants moved for summary judgment on all of Plaintiff's claims. (ECF No. 56.) Plaintiff filed a timely response on October 31, 2019, (ECF No. 31), and Defendants timely replied on November 7, 2019, (ECF No. 59). As such, the motion is fully briefed and ripe for adjudication.

---

[1] Plaintiff has stipulated to the dismissal of all state law claims asserted in the complaint except for negligent training and supervision against the City. (*See* ECF No. 58 at 1.) Therefore, the Court will not address Plaintiff's assault, battery, and negligence claims herein.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court may neither weigh the evidence, *Anderson*, 477 U.S. at 249, nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's

case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the Court must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

*A. Violations of the Fourth and Fourteenth Amendments under Section 1983*

In order to prevail on a § 1983 claim, a plaintiff must show "that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)); 42 U.S.C. § 1983. Section 1983 is not itself the source of any substantive rights. Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Here, it is undisputed that Defendants acted under color of state law. The question presented, therefore, is whether Defendants deprived Plaintiff of his Fourth Amendment rights.

1. Officer Mason

With respect to Mason, Plaintiff challenges the force that Mason applied to arrest him. Plaintiff alleges that Mason "struck [him] with a closed fist multiple times in the face" and "violently kneed [him] . . . several times." (ECF No. 1 at 2 ¶ 8; ECF No. 58 at 1.) He contends that while Mason was beating him, Plaintiff was "begging and pleading, curled up in a ball, crying

4

for [Mason] to please stop." (*Id.* at 2.) However, Mason continued to "punch him in the face multiple times," bloodying Plaintiff's face. (*Id.*) Plaintiff claims that he was "diagnosed with facial injuries[,] including a fractured nose" as a result. (*Id.*)

The Fourth Amendment provides a right to be free from unreasonable seizures, including the use of excessive force. *See Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). When evaluating an excessive force claim, the Court should determine whether the force applied was "objectively reasonable in light of the facts and circumstances confronting [the officer]" at the time. *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The objective reasonableness standard requires the Court to consider "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). Indeed, "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *Smith v. Murphy*, 634 F. App'x 914, 916 (4th Cir. 2015). The seriousness of any injury received should also be considered. *Id.* at 917.

Here, it is undisputed that Mason arrived at the scene in response to a 911 call concerning a male urinating in the roadway. (ECF No. 57-1 at 2 (Mason Dep.).) Upon arriving at the scene, Mason located Plaintiff walking out of the road and explained that he was responding to the 911 complaint. (*Id.* at 2–3.) Plaintiff admitted that he was the individual reported for public urination. (*Id.*) At this point, the parties' stories diverge. According to Mason, Plaintiff

became erratic during their conversation. His speech became unclear, he began pacing back and forth, he was unable to keep his hands still, and he was sweating profusely. (*Id.* at 4.) Plaintiff told Mason that he was having medical issues and requested immediate medical assistance for chest and stomach pains. (*Id.*; ECF No. 57-8 at 4.) Mason then called an ambulance. (*Id.*) His police report states that, at that point, a passerby stopped and asked if Mason needed assistance. (*Id.*) As Mason began to respond, Plaintiff fled the scene and crossed the street into a nearby parking lot. (*Id.*) Mason caught up to Plaintiff and wrestled him to the ground, but Plaintiff actively resisted and ignored Mason's verbal commands to place his hands behind his back. (*Id.*) Plaintiff continued to waive his arms aggressively, preventing Mason from gaining control, and struck Mason at least once with an open hand. (*Id.*) Mason then struck Plaintiff several times in the face with a closed fist. (*Id.* at 5.) Nevertheless, Plaintiff continued to resist. (*Id.*) Defendants offer the testimony of Brian Jones, a retired police officer after over 25 years of service, who states he witnessed Plaintiff's arrest. (ECF No. 57-4 at 2 (Jones Dep.).) Mr. Jones testified that he assisted Mason in holding Plaintiff down while Mason attempted to place him in handcuffs. As their struggle continued, Chief Moss arrived on scene and assisted in handcuffing Plaintiff. (ECF No. 57-1 at 5.)

Once Plaintiff was secured, the EMS arrived but they were unable to complete an assessment of Plaintiff's injuries because he was extremely uncooperative and combative. (ECF No. 57-5 at 2 (Deyerle Dep.).) During their assessment, Plaintiff was swinging, kicking, spitting, and attempting to punch the EMS personnel. (*Id.*; ECF No. 57-6 at 2 (Cogar Dep.).) One of the EMS personnel testified that, due to their policy, they requested the officers to move Plaintiff's handcuffs to his front before seating him on the stretcher. (ECF No. 57-5 at 2.) While the

6

officers were adjusting his handcuffs, Plaintiff broke his hands free and attempted to flee again. (*Id.* at 5.) Ultimately, he was secured after Mason inflicted a series of knee strikes into Plaintiff's shoulder blade. (*Id.*) Once secured, Plaintiff was placed on the stretcher and in a Reeves Sleeve, a soft restraint used to restrain combative patients. (ECF No. 57-5 at 3.)

Plaintiff has given a very different account of what happened at the time of his arrest. Primarily, Plaintiff disputes any assertion that he was resistant or combative. He claims that Mason was aggressive during their initial encounter and, therefore, Plaintiff walked away because he was scared. He relies on statements from two witnesses to support his assertion that Mason's use of force was excessive. First, he cites the testimony of Logan Moats, who witnessed the incident as he was driving by. (ECF No. 57-5 at 4 (Moats Dep.).) Mr. Moats testified that he saw police officers beating Plaintiff, who appeared to be protecting himself as opposed to fighting back. (*Id.*)

Alisha Toler also testified that Plaintiff was not resisting arrest. (ECF No. 58-2 at 2 (Toler Dep.).) She stated that Plaintiff got "the crap beat out of him" as he was "begging and pleading, curled up in a ball, [and] crying for [Mason] to please stop." (*Id.* at 7.) Because Plaintiff was "bloodied" and semi-unconscious, she testified that the number of strikes inflicted on him was "completely uncalled for." (*Id.* at 3, 5.) In her lay opinion, Ms. Toler believes that, even if Plaintiff was resisting, Mason could have used alternative methods, such as tasing, to gain control over him. (*Id.* at 2, 5.) It bears noting that Ms. Toler did not witness Mason's initial encounter with Plaintiff. During her deposition, she clarified that was not present at the scene until a fight has already ensued. (*Id.* at 3 (testifying, "I'm not going to sit here and say that I saw what happened, like what led to it, because I didn't.").) She also testified that she left soon after

7

Plaintiff was placed in handcuffs. (ECF No. 59-2 at 3 (Toler Dep.).) She did not see an ambulance at the scene, and she did not see Plaintiff flee while the officers and EMS personnel were attempting to place him in the ambulance. (*Id.*)

It is unclear from the record whether Plaintiff's conduct provoked Mason's use of force. Although Plaintiff allegedly admitted to using methamphetamine on the day of the incident, (ECF No. 57-7 (Emergency Department Report), no other evidence of any crime or offense was apparent other than public urination before Mason confronted him. It is noteworthy that Plaintiff worsened the situation for himself when he initially fled from Mason. However, there are factual disputes as to whether Plaintiff was subdued and not resisting arrest once Mason initially tackled him to the ground.

In addition, the extent of the injury inflicted by Mason's use of force is quite minimal. Although Plaintiff sustained a fractured nose, facial abrasions and swelling to the right eye, (*id.* at 7), he has not presented evidence of any long-lasting or permanent injury. Viewing the facts in the light most favorable to Plaintiff, a reasonable fact finder could conclude that Mason's actions were an objectively reasonable attempt to gain control of an escalating and potentially volatile situation. Accordingly, Mason's motion for summary judgment on Plaintiff's claim of excessive force is **DENIED**.

Mason contends, in the alternative, that he is entitled to qualified immunity with respect to Plaintiff's § 1983 claims. Qualified immunity "shields officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." *Sims v. Labowtiz*, 885 F.3d 254, 260 (4th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The Fourth Circuit has emphasized that

qualified immunity protects law enforcement officers from "bad guesses in gray areas" and it ensures that they may be held personally liable only "for transgressing bright lines." *Maciariello v. Summer*, 973 F.2d 295, 298 (4th Cir. 1992). In determining whether qualified immunity applies, the Court must look at whether the plaintiff has demonstrated that a depravation of a constitutional right has occurred and whether that right was clearly established at the time of the alleged violation. *See Pearson*, 555 U.S. at 232. A clearly established right is one that "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). With respect to the second prong, "[a] law is clearly established if 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Court may address either prong of the qualified immunity analysis first. *Pearson*, 555 U.S. at 236.

As noted above, the parties present differing views on what transpired at the time of Plaintiff's arrest on July 18, 2017. Whether or not Mason is entitled to qualified immunity is completely dependent on which view of the disputed facts is accepted by the jury. *See Willingham v. Crooke*, 412 F.3d 553, 560 (4th Cir. 2005) (holding that, where disputed material facts preclude a ruling on summary judgment, "the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury."). Thus, as issues of material fact preclude this Court from determining whether Mason's conduct was outside the boundaries of clearly established law, Mason is not entitled to summary judgment on the basis of qualified immunity.

9

2. City of Dunbar

Plaintiff also seeks to hold the City liable under § 1983. Specifically, Plaintiff claims that the City "has engaged in a pattern, practice or custom" of issuing obstruction charges without probable cause "to conceal officer misconduct." (ECF No. 1 at 7 ¶ 29.) He claims that the add-on charge is utilized as "a pretextual reason for using excessive force" and to arrest when no criminal activity has been committed. (*Id.* ¶ 30.) In addition, Plaintiff contends that the City disregarded prior excessive force complaints against Mason and that it failed to take a key witness's statement. He argues that the City's repeated failure to conduct thorough and objective investigations displays deliberate indifference to Plaintiff's constitutional rights. (ECF No. 58 at 8–11.)

A municipality can be liable under § 1983 "only where the municipality itself causes the constitutional violation at issue" through "the execution of [its] policy or custom . . . ." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see Hughes v. Halifax Cty. Sch. Bd.*, 855 F.2d 183, 186 (4th Cir. 1988) (stating that "[t]o establish municipal liability under § 1983, the plaintiff must show that the execution of a municipal policy or custom inflicts an injury."). A municipal policy may be found in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

For municipal liability to attach, the policy or custom must have a "specific deficiency or deficiencies . . . such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Carter*, 164 F.3d at 218 (citation omitted). Without a direct link between an official policy or custom and the plaintiff's alleged injuries, there is no basis for municipal liability under § 1983. *Id.* (explaining that "[a] careful examination of this 'affirmative link' is essential to avoid imposing liability on municipal decisionmakers in the absence of fault and causation.).

Plaintiff enumerates three points which he contends demonstrates a clear pattern of deliberate indifference on behalf of the City. First, he argues that a witness to Plaintiff's arrest, Ms. Toler, was not interviewed or asked to give a statement about the incident because her version of the events was averse to the City's interest in protecting its own employee. In support of this proposition, Plaintiff cites a portion of Ms. Toler's deposition establishing that, from her viewpoint, Plaintiff did not appear to be resisting arrest, (ECF No. 58-2 at 2), and was subjected to police brutality, (*id.* at 5). Captain Matthew Arthur, who was assigned to investigate the incident and submit his review of Mason's use of force to the police chief, identified seven witnesses who were interviewed, six of whom offered statements favorable to Mason's position. (ECF No. 57-11 (Review of Use of Force Report).) Arthur testified that he saw comments by Ms. Toler on Facebook, wherein she expressed negative statements about Mason's conduct during the arrest. (ECF No. 59-1 at 8 (Arthur Dep.).) Although Ms. Toler's Facebook comments were not mentioned in the report, Plaintiff's assertion that Arthur deliberately chose not to interview her is a mischaracterization of the evidence. To the contrary, Arthur testified that he attempted to contact Ms. Toler for an interview, but she never responded. (*Id.*) Ms. Toler also testified that

she left the scene "before anybody had asked [her] for a statement because [she] did not want to be involved . . . ." (ECF No. 58-2 at 6.) She also stated that the Dunbar Police Department contacted her for a statement, but she refused to give one. (*Id.*) Plaintiff's assertion that the City failed to thoroughly and objectively investigate the incident based on its failure to obtain a statement from Ms. Toler is unsupported by the record and does not create a genuine issue of material fact.

As further evidence of deliberate indifference on the part of the City, Plaintiff argues that the City failed to investigate two previous excessive force complaints filed against Mason. The first incident involved Keith Rychlik, who alleged that Mason pushed him against a wall, threw him onto the floor, and kicked and hit him while he was handcuffed behind his back. (ECF No. 58-8 at 6 (Arthur Dep.).) Plaintiff claims that the incident was not thoroughly investigated because the Dunbar Police Department failed to preserve video evidence of the incident and never interviewed Mason about the allegations. He further claims that Mason was never admonished for his conduct nor did he receive a verbal or written reprimand.

However, the record does not support Plaintiff's conclusory assertions. Arthur testified that he reviewed a video of the incident caught on the surveillance system a couple times before completing his report to the police chief. (ECF No. 59-1 at 4.) At the time, Rychlik had not yet filed a complaint and, therefore, the video was purged pursuant to the Department's document management protocol. (*Id.*) Later, it was discovered that Mason preserved a copy of the video for himself. (*Id.* at 3.) Arthur testified that he obtained the copy, reviewed it, and forwarded it to the police chief and the FBI, who also was conducting a civil rights investigation into the matter. (*Id.* at 2–3.) The FBI never followed-up and, thus, it was presumed no violations were found.

(*Id.* at 3–4.)  The Department also concluded its investigation after Arthur submitted his report, which summarized Rychlik's statement and information captured on the video surveillance. (ECF No. 58-6 at 3.)  The fact that Mason was not notified of any internal investigation regarding this incident, (ECF No. 58-4 (Mason Dep.)), does not by itself demonstrate that the City was deliberately indifferent to a potential constitutional violation.

Even so, allegations of one prior incident of excessive force by Mason is insufficient to establish an official municipal policy or custom.  While a municipal custom can be inferred from a municipality's failure to correct or stop unconstitutional conduct by police officers, such an omission gives rise to § 1983 liability only where there is "a history of widespread abuse." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983).  A single violation cannot support an inference that the violation resulted from a municipally condoned custom.  *Id.*; *Russell v. Town of Chesapeake*, 817 F. Supp. 38, 42 (S.D. W. Va. 1993) (holding that a "failure to investigate [one] incident falls far short of establishing a pattern of comparable practices sufficient to demonstrate a policy resulting from condoned custom.").

Plaintiff tries to surmount this obstacle by pointing to a second complaint against Mason by Paul Shamblin that he contends the City failed to thoroughly investigate.  However, this incident did not involve allegations of excessive force or any physical contact by Mason.  (ECF No. 59-1 at 7.)  Mr. Shamblin simply accused Mason of being "rude," "loud," and "aggressive" during a traffic stop.  (*Id.* at 5–6.)  Arthur testified that he took Mr. Shamblin's statement, (*id.* at 6), but a report was not completed because Mr. Shamblin failed to provide him with a recording of the incident he claimed to possess, (*id.* at 7).  In light of Arthur's testimony, Plaintiff's assertion

that the City fails to investigate allegations of officer misconduct or excessive force is unconvincing.

To the extent Plaintiff claims that the City has engaged in "a pattern, practice or custom of using obstruction as a charge", without probable cause, "to conceal officer misconduct", (ECF No. 1 at 7 ¶¶ 29–30), there is no evidence in the record to support this assertion. Plaintiff has failed to adduce evidence establishing that a policy or custom of the City directly resulted in the constitutional violation he allegedly suffered. Accordingly, as there is no evidence establishing a basis for municipal liability under § 1983, the Court **GRANTS** the City's motion for summary judgment on Count II.

*B. Negligent Training and Supervision*

Plaintiff also claims that the City's failure to adequately train and supervise its officers resulted in violations to his constitutional rights. (ECF No. 1 at 7 ¶ 31.) Plaintiff bases this claim on the assertion that the City "received numerous complaints" of excessive force and aggressive behavior by Mason but failed to address these issues or thoroughly investigate the complaints against him. (ECF No. 58 at 12.)

Under West Virginia law, a negligence action based on the failure to supervise or train "must rest upon a showing that the employer failed to properly supervise [or train] its employees and, as a result, those employees proximately caused injury to another." *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 817–18 (S.D. W. Va. 2012) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)). "A direct act or omission by a principal is required to hold it primarily liable under a negligent supervision theory." *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 506 (S.D. W. Va. 2014). A failure to

supervise or train claim "requires an independent finding of negligence on the part of a supervised employee." *Id.* (citing *Taylor*, 538 S.E.2d at 725); *Webb v. Raleigh Cnty. Sheriff's Dep't*, 761 F. Supp. 2d 378, 397 (S.D. W. Va. 2010).

Here, the City has a use of force policy that provides guidelines for effectively dealing with aggressive or uncooperative individuals. (ECF No. 57-10 (Policy and Procedures Manual.) As noted previously, Plaintiff has set forth evidence of only two excessive force complaints against Mason: the instant matter and the Rychlik complaint. The undisputed evidence demonstrates that Mason completed a report of both incidents. (ECF No. 57-8.) Likewise, Captain Arthur reviewed Mason's use of force and concluded that Mason acted within policy guidelines. (ECF No. 58-9 (Use of Force Report); ECF No. 58-11; ECF No. 58-6 at 3.)

In addition, Defendants have presented a detailed expert report of Sam Faulkner establishing that the Dunbar Police Department's investigation and review of this incident was conducted correctly and reasonably. (ECF No. 57-12 (Faulkner Expert Report).) Mr. Faulkner also found that Mason had probable cause to arrest Plaintiff, that the officers' responses to Plaintiff's purportedly "resistive and assaultive" behavior were reasonable and in compliance with their training, and that "[t]here is nothing in [ ] Mason's hiring, training, or employment information that would have alerted or caused concern for [his] employment or for his functioning as a law enforcement officer." (*Id.* at 6.) Plaintiff has no opposing expert. Further, there is undisputed evidence that the FBI investigated the Rychlik complaint and took no further action. (ECF No. 59-1 at 3–4.) In sum, the record demonstrates a lack of support for Plaintiff's allegations of negligent training and supervision. Accordingly, the Court **GRANTS** the City's motion for summary judgment on Count III.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment. (ECF No. 56.) The Court **GRANTS** Defendants' motion for summary judgment in its entirety with respect to the City of Dunbar and **DENIES** the motion insofar as it seeks summary judgment for Mason.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 28, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE